IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CRYSTAL L. CLOUGH,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:15-cv-00140-MA

OPINION AND ORDER

SHERWOOD J. REESE
DREW L. JOHNSON
1700 Valley River Drive
Eugene, OR 97405

    Attorneys for Plaintiff

JANICE E. HEBERT
Assistant United States Attorney
District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

ERIN F. HIGHLAND
Assistant Regional Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 98104
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Crystal L. Clough seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the Commissioner's decision.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed an application for SSI on July 15, 2011, alleging disability beginning June 1, 2011, due to depression and anxiety. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on September 11, 2013, at which plaintiff appeared with her attorney and testified. A vocational expert, Jeffery F. Tittlefitz, also appeared at the hearing and testified. On September 20, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born on May 7, 1987, and was 24 years old on the alleged onset of disability date. Plaintiff did not complete high school, has obtained a GED, and attended two quarters of community college. Plaintiff has no past relevant work experience.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See*

*Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"), depression, personality disorder, obsessive compulsive disorder ("OCD"), and possible attention deficit hyperactivity disorder. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, however, plaintiff is limited to simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors and the general public.

At step four, the ALJ found that plaintiff has no past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as janitor, hand packager, and electronics worker. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from July 15, 2011 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated her testimony; (2) the ALJ improperly evaluated the opinion of her mental health therapist Cheryl Haun, M.A.; and (3) the ALJ improperly evaluated the lay testimony.

3 - OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## I. The ALJ Did Not Err in Discounting Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony

regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, plaintiff testified that in June 2011, she dropped out of school after her second term because she was not sleeping and school was very difficult. Tr. 38. Plaintiff stated that she had a friend attend school with her, and that school worsened her OCD. Plaintiff said that when she was in school, she would stay up for days, working on a paper through the night. Plaintiff testified that her depression keeps her from working, that she suffers anxiety every day, and that she does not go out of the house alone. Tr. 46-47. Plaintiff testified that she attends counseling and that it is helpful, but the progress is slow.

Plaintiff stated that she has a son and a daughter who are in first and third grades. Plaintiff described that she independently takes care of her two children, including making their meals, bathing, brushing teeth, taking vitamins, and helping with homework. Plaintiff testified that she obsessively cleans her house, pacing around the house, looking for something to clean. Plaintiff also indicated that she gets exhausted from not sleeping due to her anxiety, and takes a two hour nap each day while the children are at school. Plaintiff stated she has a boyfriend, and that she and her

5 - OPINION AND ORDER

boyfriend take the kids to the river to go fishing, and she sometimes hosts barbeques at her house. Tr. 42.

Plaintiff stated she does not watch TV, but will look up recipes and organization tips on the internet. Plaintiff does all the grocery shopping, but does not like to go alone, and consequently brings her children with her to the grocery store. Tr. 48. Plaintiff stated that she attends parent-teacher conferences, is able to drive, and socializes with friends an hour or two every couple of weeks, and says hello to the neighbors. Tr. 44. Plaintiff testified at the hearing that she takes Wellbutrin, Klonopin, and Abilify for her anxiety and depression. Plaintiff testified that she does not like to go out and socialize, and that her problem is worse than it was two or three years ago.

In an Adult Function Report, plaintiff stated that she struggles being around strangers because it increases her anxiety and decreases her concentration. Tr. 173. Plaintiff stated she has difficulty remembering instructions, and that she experiences panic attacks. Plaintiff stated that in a typical day, she will wake her children, feed them breakfast, and get them off to school. Afterward, plaintiff noted that she will clean up the house, then lie down to rest. Plaintiff described that after her children are done with school, she assists them with homework and plays with them until it is time to make dinner. After dinner, plaintiff bathes them, reads them one to three stories, then puts them to bed. Plaintiff described that after the children are in bed, she watches television or listens to music, showers, then goes to bed. Tr. 174. Plaintiff stated that she needs reminders to take her medication, and cooks daily, but rarely makes meals from scratch. Tr. 175. Plaintiff indicated that she does not like to leave the house, and that family, friends, and a neighbor visits at her home one to two times per week. Tr. 177. Plaintiff noted that she has lost interest in hobbies, and that she does not use the phone or computer. Tr. 177. Plaintiff also stated that her friend takes her to

volunteer at her son's school for an hour each week, but that she does not always go, and will not go alone. Tr. 177.

In the decision, the ALJ found that plaintiff's impairments could reasonably be expected to cause some symptoms, but that her statements concerning the limiting effects were not entirely credible. The ALJ cited three reasons for discounting plaintiff's credibility: (1) inconsistency with clinical observations; (2) inconsistency with reported daily activities; and (3) over-reporting of symptoms to Dr. Truhn.

### A. ALJ Could Find Plaintiff's Degree of Debilitating Anxiety and Depression Inconsistent with Clinical Evidence

Inconsistency with treatment records is a valid credibility consideration, so long as it is not the sole reason for discounting a claimant's credibility. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001) (inconsistency with medical evidence is a relevant consideration but cannot be the sole ground to discount credibility). Here, the ALJ discussed a mental health assessment performed on May 26, 2011, one week before plaintiff's alleged onset of disability. The ALJ noted that plaintiff was observed to be "depressed with a flat affect" but cooperative. Tr. 320. The ALJ discussed that despite plaintiff's depression, she had normal thought content, she was alert, oriented, with no memory or concentration difficulties, with normal intelligence and good judgment. Tr. 320.

The ALJ discussed that later clinical observations showed some deficits, but found that plaintiff could perform simple, routine tasks with occasional interaction with the public, and perform low stress work. The ALJ observed that plaintiff was "disheveled and restless" and "lethargic" but that she was "oriented with an estimated normal intelligence." Tr. 21, 328. Indeed, the ALJ pointed

7 - OPINION AND ORDER

to treatment notes describing plaintiff as depressed and tearful, but was cooperative, oriented, alert, "with intact memory and normal speech." Tr. 21, 402-403.

The ALJ discussed that plaintiff's contention that her anxiety and depression prevent her from working in any capacity is inconsistent with the evaluations performed by Drs. Truhn and Pethick, as well as non-examining psychologist Kordell Kennemer, Psy.D., and Joshua Boyd, Psy.D. Each of these doctors opined that plaintiff was capable of performing simple, routine tasks, she could complete a normal workweek, and that plaintiff could have occasional public and coworker contact.

For example, Steve Pethick, Ph.D., conducted a comprehensive evaluation on February 9, 2010 on behalf of Vocational Rehabilitation. Dr. Pethick diagnosed PTSD, chronic; Depressive Disorder NOS; Learning Disability, NOS (academic fluency, spelling); Generalized Anxiety Disorder; and Rule Out diagnoses of Bipolar Disorder and Panic Disorder with Agoraphobia. Tr. 223, 229. Dr. Pethick opined that there was a "wide range of suitable employment settings" for plaintiff. Tr. 230. Dr. Pethick found that plaintiff's overall cognitive abilities ranged from average to high average. The ALJ discussed that Dr. Pethick indicated that plaintiff had a "more difficult time with tasks requiring speed in processing written information and numerical information." Tr. 23, 227. The ALJ also noted that Dr. Pethick indicated that plaintiff's employment should involve "accommodations in extra time to complete tasks involving significant reading or mathematics and be provided with clear, written instructions for job tasks." Tr. 23, 230. The ALJ's findings are wholly supported by substantial evidence.

Similarly, David R. Truhn, Psy.D., performed a comprehensive psychological evaluation of plaintiff on October 31, 2012 and November 27, 2012. Tr. 415. Dr. Truhn found that plaintiff had average intelligence without any specific memory deficits, had adequate concentration and ability

to attend to tasks, could follow simple directions, and worked at a reasonable pace, needing only to break from the evaluation in order to provide childcare. Tr. 426. Dr. Truhn noted that plaintiff's results on the MMPI-2 showed that plaintiff was over-reporting symptoms. Tr. 23, 423. As the ALJ noted, Dr. Truhn indicated that plaintiff described symptoms that contradicted herself, and that her personality inventories indicated exaggeration. Tr. 425. Dr. Truhn found that plaintiff's exaggerated response style produced elevations on scales "that were not corroborated by the interview and the overall elevation on nearly all of the scales." Tr. 423. Notably, Dr. Truhn stated that the "symptoms [plaintiff] is endorsing are not consistent with the symptoms that she described in the clinical interview and is a broader representation of psychopathology." Tr. 426. Dr. Truhn diagnosed plaintiff with Dysthymic Disorder, Early Onset; Panic Disorder, with Agoraphobia, Social Phobia; Cannabis Abuse in Full Sustained Remission; and Rule Out diagnoses of Alcohol Abuse and Malingering. As the ALJ discussed, Dr. Truhn recommended that plaintiff participate in Vocational Rehabilitation and that she seek vocational programs involving little interaction with others. Tr. 23, 426. Again, the ALJ thoroughly and carefully examined Dr. Truhn's testing and the findings and inferences drawn are supported by substantial evidence.

The ALJ must review plaintiff's treatment notes in light of overall diagnostic picture. *Ghanim*, 763 F.3d at 1163; *Garrison*, 759 F.3d at 1017. Plaintiff has reported symptoms of mild depression and anxiety with occasional bouts of more severe depression, and plaintiff has been prescribed a variety of medications in an effort to improve her overall functioning. Tr. 250, 256, 297, 302. The ALJ also discussed that plaintiff has a history of self-harming behavior, including cutting and burning. The ALJ correctly noted that plaintiff's self-harming has been intermittent and atypical during the relevant period. Tr. 21. Examining the record as a whole, I conclude that the

longitudinal picture of plaintiff's mental health supports the ALJ's finding that the severity of plaintiff's subjective symptoms inconsistent with the clinical evidence. Even if the objective medical evidence could support plaintiff's interpretation, the ALJ's determination is reasonable and must be upheld. *Batson*, 359 F.3d at 1193.

### B. Plaintiff's Activities of Daily Living Are Inconsistent with Her Allegations of Debilitating Limitations

The ALJ also discounted plaintiff's credibility because the degree of social limitation and anxiety she alleged were inconsistent with the extensive activities she described. Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. In the decision, the ALJ discounted plaintiff's credibility because she was able to attend classes at community college for two terms and received straight A's. The ALJ found plaintiff's ability to perform well, despite her stress and anxiety, undermines her allegations that she is unable to work in any capacity. Tr. 21. I agree. As the ALJ discussed, plaintiff's ability to attend school is inconsistent with her allegations of disabling social phobia. As the ALJ correctly indicated, plaintiff admitted in her testimony that she attended some, but not all, classes with a friend, contrary to plaintiff's allegation that she is unable to be alone. Moreover, as the ALJ discussed, plaintiff was able to maintain excellent grades, despite feeling overwhelmed.

Additionally, the ALJ detailed numerous other daily activities plaintiff performs and found them "inconsistent with the extreme degree of social limitation and anxiety she alleged." Tr. 22. Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. *Molina*, 674 F.3d at 1112. Specifically, the ALJ noted that plaintiff is the primary caretaker for her two young children, and she performs all household chores,

including cooking, laundry, dishes, cleaning, and yard work. The ALJ discussed that plaintiff not only is able to follow recipes, but also is able to research recipes, nutrition, and organization articles on line for hours, undermining her allegations that she is unable to focus and does not use the computer. Tr. 177, 395. The ALJ pointed out that plaintiff plays games with her children, walks them to the bus stop, visits her parents every other week, visits with a neighbor once a week, and volunteers at the children's school once a week. As the ALJ found, these activities are inconsistent with plaintiff's allegations of disabling social anxiety.

Additionally, the ALJ discussed that plaintiff avoids using the telephone, but had no difficulty calling her therapist for counseling sessions when necessary. Also, as the ALJ correctly indicated, plaintiff sends and receives emails and texts. Tr. 18, 22. The ALJ noted that plaintiff hosted barbeques, drinks socially two nights a week, occasionally has friends to her house, and that plaintiff was required to perform community service to maintain her housing. The ALJ noted plaintiff and her boyfriend took the children fishing, she went camping with her family, she attended a school graduation, and reported to medical personnel that she and her boyfriend occasionally go on dates to the mall for dinner and a movie. Tr. 22, 419. The ALJ specifically found plaintiff's report about going on dates with her boyfriend inconsistent with plaintiff's hearing testimony denying that she and her boyfriend go to restaurants. The ALJ's findings concerning plaintiff's daily activities are supported by substantial evidence in the record. I conclude that when the ALJ's first and second reasons are combined, they provide clear and convincing support for the ALJ's adverse credibility determination. *Molina*, 674 F.3d at 1113 (finding claimant's daily activities and inconsistency with medical evidence supported adverse credibility determination).

### C. Plaintiff's Exaggeration Undermined Her Allegations

Lastly, the ALJ discredited plaintiff based on her over-reporting of symptoms to Dr. Truhn. As the ALJ noted, results of the MMPI-2 indicated that plaintiff was over-reporting symptoms, and that her personality inventory was similar to those who magnify their illness, and discounted plaintiff's credibility on this basis. Tr. 23. A tendency to exaggerate symptoms may be considered when determining credibility. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a credibility determination based on, among other things, a tendency to exaggerate, was supported by substantial evidence). As discussed above, Dr. Truhn's findings are backed by substantial evidence in the record, and supply further support for the adverse credibility determination.

Having carefully reviewed the record in its entirety, I conclude that the ALJ provided clear and convincing evidence for rejecting plaintiff's testimony about the severity of her symptoms. The ALJ thoroughly examined the conflicting evidence and made findings based on his observations. Indeed, this case is a close one, and the nuances of plaintiff's allegations are reflected in the ALJ's carefully crafted RFC. In short, the court concludes that while the record may be susceptible to more than one rational interpretation, the ALJ's decision is supported by substantial evidence, and thus the court may not engage in second-guessing. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (explaining that the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities ... [therefore the Court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("we cannot substitute our conclusions for the ALJ's").

## II. The ALJ Provided Germane Reasons for Discounting the Opinion of Plaintiff's Mental Health Counselor

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Garrison*, 759 F.3d at 1012; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. § 416.927(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 416.927(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 416.927(d)(2-6); *Ghanim*, 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Taylor v. Commissioner Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Only physicians and certain other qualified specialists are considered "[a]cceptable medical sources." *Molina*, 674 F.3d at 1111 (alteration in original); see also 20 C.F.R. § 416.913(a). Nurse practitioners and therapists are considered "other sources." 20 C.F.R. § 416.913(d). An ALJ must evaluate the opinions from other sources, and may discount such testimony if the ALJ provides germane reasons for doing so. *Ghanim*, 763 F.3d at 1161; 20 C.F.R. § 416.927(c).

Plaintiff argues that the ALJ failed to provide adequate reasons for discounting the opinions of Cheryl Haun, M.A., plaintiff's treating mental health counselor from May 2012 to July 2013. During that time, plaintiff met with Haun approximately once each week. In a March 15, 2013 Annual Mental Health Assessment, Haun opined that plaintiff is "not able to maintain a job due to anxiety, depression, and OCD." Tr. 377. In a September 2, 2013 Mental Residual Functional Capacity Assessment ("MRFC"), Haun opined that plaintiff's learning disability would make it difficult to learn and initiate new material, and that plaintiff's traumatic history had a "crippling effect" on her ability to function at home and in the public. Tr. 24, 428-431. In the MRFC, Haun opined that plaintiff had severe limitations in numerous areas, including: remembering detailed instructions, making simple work-related decisions, working in proximity to others, performing at a consistent pace without an unreasonable amount of rest periods, interacting with the public, asking simple questions, traveling to unfamiliar places, and setting realistic goals. Tr. 429-31.

The ALJ provided three germane reasons for giving Ms. Haun's opinions "very little weight": (1) Haun is not an acceptable medical source and her opinions are inconsistent with "the clinical observations and testing" of Drs. Pethick and Truhn; (2) Haun's opinions are inconsistent with plaintiff's activities of daily living; and (3) Haun's March 15 opinion did not adequately consider plaintiff's ability to perform well in school despite her impairments.

14 - OPINION AND ORDER

### A. Ms. Haun's Opinion Was Contradicted by Opinions from Acceptable Medical Sources

The parties do not dispute that Ms. Haun is an "other source" who "can provide evidence about the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. § 416.913(d). However, Haun's opinions are not entitled to the same deference as licensed physicians or other specialists. *Molina*, 674 F.3d at 1111; 20 C.F.R. § 416.927. The ALJ appropriately discounted Ms. Haun's opinions because they are contradicted by those of acceptable medical sources Drs. Pethick and Truhn. Drs. Pethick and Truhn specialize in the relevant field of psychology and their opinions were entitled to greater weight.[1] *Molina*, 674 F.3d at 1112. SSR 06-03p (stating that opinions from an acceptable medical source may be entitled to greater weight than those from other sources).

As discussed above, Dr. Pethick opined that there was a wide range of suitable employment settings for plaintiff. The ALJ gave Dr. Pethick's opinion "significant weight" because it was consistent with the testing he performed, his observations of plaintiff's social functioning, and plaintiff's report of her various activities, such as caring for her children, researching on the internet, and receiving excellent grades while at college. Plaintiff argues that Dr. Pethick's opinion is not reliable because it was rendered prior to her June 2011 alleged onset date. Plaintiff also highlights

---

[1] In the decision, the ALJ gave "great weight" to the opinion examining psychologist Dr. Truhn, and "significant weight" to the opinions of examining psychologist Dr. Pethick, and non-examining psychologists Kordell N. Kennemer, Psy.D., and Joshua J. Boyd, Psy.D. The ALJ explained that he gave greater weight to Dr. Truhn's opinion over Dr. Pethick's because Dr. Truhn had the opportunity to review Dr. Pethick's prior evaluation. Additionally, the ALJ explained that he favored Dr. Truhn's opinion over Drs. Kennemer and Boyd's because Dr. Truhn had the opportunity to observe plaintiff during testing and conduct an interview. The ALJ's RFC is more limited than Dr. Truhn's opinion "in an abundance of caution and is to benefit of [plaintiff]." Tr. 24.

15 - OPINION AND ORDER

that Dr. Pethick opined that plaintiff was capable of attending school, and yet doing so precipitated her increased anxiety and debilitating symptoms. According to plaintiff, Dr. Pethick's opinion is not inconsistent with Ms. Haun's opinion that plaintiff has severe limitations with concentration for "extended periods" and completing a normal workday and work week" without interruptions. Tr. 429-30. I disagree.

To be sure, the ALJ is required to evaluate all opinion evidence received. *See Tommasetti*, 533 F.3d at 1041 ("The ALJ must consider all medical opinion evidence."); 20 C.F.R. § 416.927(b). Dr. Pethick's evaluation is probative evidence, and the ALJ properly considered it. It is clear in the decision that the ALJ carefully considered and weighed Dr. Pethick's testing results and found Dr. Pethick's observations consistent with plaintiff's social functioning. Although plaintiff contends that her anxiety and OCD were exacerbated by attending school, as discussed above concerning plaintiff's credibility, the ALJ appropriately discounted the severity of plaintiff's subjective complaints. The ALJ's finding that Ms. Haun's opinions were inconsistent with those of acceptable medical sources is wholly supported by substantial evidence and provides a germane reason for rejecting Haun's opinions.

### B. Ms. Haun's Opinion Was Inconsistent with Plaintiff's ADL's

As the ALJ discussed, the limitations described by Ms. Haun, such as traveling to unfamiliar places, interacting with the public, asking simple questions, and setting realistic goals were inconsistent with plaintiff's ability to perform various activities. Although plaintiff engages in numerous activities inside her home, her ability to clean, cook, assist with homework, and do laundry and yard work is inconsistent with Haun's opinion that plaintiff is unable to work at a consistent pace without an unreasonable amount of rest periods. Ms. Haun's opinion that plaintiff's traumatic

history has had a "crippling effect" on her ability to function at home and in public is undermined by plaintiff's ability to independently raise her children and run her household, as well as engage in numerous activities doing outside her home, such as grocery shopping, camping, fishing, and visiting with friends, and volunteering at her son's school, as detailed by the ALJ. The ALJ's findings are wholly supported by substantial evidence in the record and provide a second germane reason for discounting Haun's opinion.

### C. Plaintiff's Ability to Attend School Is Inconsistent with Ms. Haun's Opinion

I likewise reject plaintiff's argument that the ALJ erred in rejecting Ms. Haun's opinions because they were based on plaintiff's ability to maintain good grades while in school. As discussed above, the ALJ could reasonably infer that plaintiff's social anxiety and phobia are not a severe as alleged because she was able to perform well in school based on the evidence in the record as a whole. Even if the ALJ erred in discounting Haun's opinion on this basis, the error would be harmless. The ALJ provided two other germane reasons supported by substantial evidence to justify giving Haun's opinion less weight. *Molina*, 674 F.3d at 1122 (upholding ALJ decision where error is inconsequential to the ultimate nondisability determination). Accordingly, the ALJ did not err in discounting Haun's opinion.

### III. The ALJ Provided Germane Reasons for Discounting the Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for

competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

Plaintiff's friend, Brenda Vogel, submitted a letter dated August 16, 2013. Tr. 202. In the letter, Ms. Vogel noted that she has known plaintiff for 15 years, and described plaintiff as suffering from OCD, depression and social anxiety. Ms. Vogel stated that plaintiff becomes overwhelmed easily and that plaintiff has difficulty finishing projects. Ms. Vogel described plaintiff as shy and withdrawn, and that plaintiff is at times unable to leave the house. Ms. Vogel stated that sometimes plaintiff shuts down and is unable to communicate in social situations. Ms. Vogel noted that plaintiff is unable to hold down a job or be successful in school because plaintiff is so insecure. Tr. 202.

Plaintiff's mother, Dawn Clough, submitted a letter dated August 30, 2013. In that letter, Ms. Clough described plaintiff as lacking in self-esteem and confidence, having a negative or catastrophic world view, with troubled personal relationships and many health issues. Tr. 204. Ms. Clough described plaintiff as being afraid of what other people say about her, and described that during a Fourth of July party plaintiff hosted, plaintiff hid in the bathroom for several hours, and called Ms. Clough on the phone, hysterical and crying. Ms. Clough described plaintiff as unable to go anywhere alone, and often brings her children with her so that she is not alone. Ms. Clough described that plaintiff is convinced that something tragic will happen to her children if she is not diligent about their safety, especially when they play by the river. Tr. 205.

Ms. Clough also stated that plaintiff's relationships with some family members is strained, and that plaintiff has few friends. Ms. Clough noted that plaintiff has had a boyfriend for one year, but that plaintiff's depression has taken a toll. Ms. Clough noted that plaintiff's depression affects

her sleep, and that plaintiff is always tired, and suffers from short term memory loss and occasionally forgets about appointments. Ms. Clough does not believe that plaintiff is capable of working and does not function like a normal adult. Tr. 206.

The ALJ discounted Ms. Vogel's statement because it was inconsistent with plaintiff's ability to successfully attend community college and receive good grades. Tr. 25. The ALJ discounted Ms. Clough's testimony because it relied on plaintiff's less than credible subjective complaints. As discussed above, I have determined that the ALJ appropriately discounted plaintiff testimony on these bases, and therefore, the ALJ's reasoning applies to Vogel and Clough's testimony with equal force. *Molina*, 674 F.3d at 1122; *Valentine*, 574 F.3d at 694 (an ALJ may reject lay witness testimony if it is based on a claimant's testimony that has been properly discounted). Accordingly, the ALJ has provided reasons germane to Vogel and Clough for discounting their testimony.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.

IT IS SO ORDERED.

DATED this __14__ day of DECEMBER, 2015.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

19 - OPINION AND ORDER